UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BERNARD SORRENTINO,

                              Plaintiff,

        v.                                      9:03-CV-0104

ROBERT OUTHOUSE, SHERIFF, CAYUGA COUNTY;
JOHN MACK, LIEUTENANT, CAYUGA COUNTY JAIL;
DOUGLAS BUTLER, SERGEANT, CAYUGA COUNTY JAIL,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

**<u>DECISION and ORDER</u>**

**I. BACKGROUND**

        In this *pro se* civil rights complaint brought under 42 U.S.C. § 1983, Inmate Bernard Sorrentino

("Plaintiff") alleges that Cayuga County Jail Lieutenant John Mack, Sergeant Douglas Butler, and

Cayuga County Sheriff Robert Outhouse (collectively "Defendants") violated his constitutional rights

when (1) documents prepared by Plaintiff for use in his defense at trial were confiscated; (2) Plaintiff

was placed in solitary confinement; (3) Plaintiff was denied access to the law library; (4) Plaintiff was

given inadequate medical care; (5) Defendants retaliated in response to Plaintiff voicing complaints;

and (6) Plaintiff was attacked by another inmate due to Defendants' deliberate indifference to security

and supervision despite Plaintiff's voiced fears.  (Pl.'s Aff. ¶ 2).

        Currently before the Court is Defendants' motion for summary judgment.  Defendants' motion

raises the following issues: (1) whether the injunctive relief sought by Plaintiff must be dismissed for

mootness; (2) whether Plaintiff is not entitled to punitive damages because this action was brought against the Defendants in their official capacities; (3) whether Defendants are entitled to qualified immunity; (4) whether Plaintiff's action should be dismissed because Defendants had no personal involvement; (5) whether Plaintiff's causes of action against Defendant Outhouse based on New York state law should be dismissed because Plaintiff has failed to comply with New York's General Municipal Law; and (6) whether Plaintiff's cause of action based on the seizure of his printed materials must be dismissed under the doctrine of collateral estoppel.

For the reasons discussed below, Defendants' motion for summary judgment is granted.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists. Santiago v. C.O. Campisi Shield # 4592, 91 F. Supp.2d 665, 669 (S.D.N.Y. 2000). There is no issue for trial unless there is sufficient factual disagreement such that the evidence submitted to a reasonable jury could return a verdict favoring the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Therefore, the moving party's burden is satisfied if that party establishes that an essential element of the nonmoving party's case is unsupported by evidence. Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 466 (S.D.N.Y. 1998).

If the moving party meets its burden, the burden then shifts to the nonmoving party to present sufficient evidence to support a jury verdict in its favor. Aziz Zarif Shabazz, 994 F. Supp. at 466. Simply making vague, conclusory allegations or broad denials of the pleading will not defeat an

otherwise properly supported motion for summary judgment.  Govan v. Campbell, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial.  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  In determining whether to grant summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences from the submitted materials in a light most favorable to the non-moving party.  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004).  Summary judgment should be granted only when it is apparent that no rational trier of fact could find in favor of the nonmoving party because evidence supporting its claim is lacking.  Aziz Zarif Shabazz, 994 F. Supp. at 467.

Furthermore, where a party is proceeding *pro se,* the Court must construe the *pro se* litigant's pleadings and papers liberally[1] and interpret them to raise the strongest arguments that they suggest. Veloz v. New York, 339 F. Supp.2d 505, 513 (S.D.N.Y. 2004).  However, the application of this lenient standard does not relieve Plaintiff of the requirement to allege specific facts or particular laws that have been violated to defeat a motion for summary judgment.  Veloz, 339 F. Supp.2d at 513.  It further does not excuse the Plaintiff from following the procedural formalities of Local Rule 7.1(a)(3).[2] Govan, 289 F. Supp.2d at 295.  Generally a dismissal of a *pro se* complaint is justified when it is beyond doubt that the plaintiff cannot prove facts in support of his claim which would entitle him to

---

[1] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers."  Govan, 289 F. Supp.2d at 295.  The Court has an obligation to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.  Id.

[2] The courts of the Northern District adhere to a strict application of Local Rule 7.1(a)(3) requirement on summary judgment motions, specifically providing that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  Govan, 289 F. Supp.2d at 295. Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise."  Id.  See also, Osier v. Broome County, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999).

relief.  Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991).  However, because the local rules impose a strict requirement that parties provide specific record citations in support of their statement of material facts, the Court may grant summary judgment on that basis even when a *pro se* party is involved. Govan, 289 F. Supp.2d at 295.

## III. DISCUSSION

### A.  Statement of Material Facts

Plaintiff did not file a statement of undisputed material facts in compliance with Local Rule 7.1(a)(3).  Consequently, the Court will accept the properly supported facts contained in the Defendants' 7.1 statement as true for purposes of this motion.

Plaintiff is currently incarcerated at the Five Points Correctional Facility.  (Pl.'s Dep. 6, Feb. 24, 2005).  This action was commenced on January 24, 2003 against Cayuga County Sheriff Robert Outhouse and Lieutenant John Mack and Sergeant Douglas Butler at the Cayuga County Jail.  In 2002, Plaintiff was convicted for the murder of his wife.  (Pl.'s Dep. 6).  From the time of his arrest until shortly after his conviction in early 2003, Plaintiff was incarcerated at the Cayuga County Jail for ten months, from approximately April, 2002 until February, 2003.  (Pl.'s Dep. 7).  Plaintiff's claims are based on varying acts and omissions that occurred between the time periods of April 2002 through February 2003, while Plaintiff was detained at the Cayuga County Jail for the purpose of attending trial in connection with his criminal indictment.  (Pl.'s Aff. ¶ 2).

Approximately five months into his incarceration, Plaintiff was placed in the Cayuga County Jail's Restricted Housing Unit (RHU).  (Pl.'s Dep. 11-12).  Plaintiff alleged that he was placed in the solitary confines of RHU for approximately 90 days.  (Pl.'s Aff. ¶ 3).  Plaintiff was placed in RHU because he received five misbehavior reports in a span of twelve days.  (Pl.'s Dep. 13-16).

Plaintiff also alleged he was denied adequate medical care.  However, Plaintiff made contradictory statements whether he suffered from any physical illnesses or injuries that required medical attention.  (Pl.'s Dep. 33-34).  Plaintiff received his prescribed medication and treatment on a daily basis, whenever it was required.  (Wallace Dep. 7, Feb. 24, 2005).  Plaintiff further alleged that he was denied proper mental health care at the Jail but again contradicted himself and stated he did not require such treatment.  (Pl.'s Dep. 34).  Instead, Plaintiff "just wanted to talk" with a woman on the medical staff.  Id.  Plaintiff did not suffer from any continuous mental health problem.  (Pl.'s Dep. 35).

Plaintiff next alleged that he was improperly denied access to the law library.  Plaintiff stated that he made daily requests to visit the law library.  (Pl.'s Dep. 36).  Although Plaintiff was granted access to the law library, not every request was granted.  (Pl.'s Dep. 37).  There were occasions when Plaintiff was denied access based on safety and security concerns when there was a lack of available escorts.  (Hurd Dep. 24, Feb. 24, 2005).  Nevertheless, Plaintiff was never denied access to the law library when an escorting officer was available.  (Hurd Dep. 25).

Plaintiff further alleged that his research documents were improperly seized by Defendants. Specifically, Plaintiff complained about the seizure of medical studies on the drug Prozac, which Plaintiff intended to introduce at his criminal trial.  (Pl.'s Dep. 59).  This seizure was supervised by Defendant Butler.  (Butler Aff. ¶ 9-10).

Finally, Plaintiff alleged that Defendants were liable for injuries he sustained in an altercation with another inmate, James Holmquist, in the dormitory shared by the two individuals.  (Pl.'s Dep. 39). There were no officials around at the outset of the fight, but once the corrections officers saw the altercation occurring, they arrived on scene without delay and stopped it.  (Pl.'s Dep. 45).

**B.  Personal Involvement**

The Defendants contend they were not personally involved in the alleged constitutional violations.  The doctrine of *respondent superior* does not apply to actions under 42 U.S.C. § 1983. Porter v. Selsky, 287 F. Supp.2d 180, 184 (W.D.N.Y. 2003).  Because *respondeat superior* cannot provide a basis for liability under § 1983, Defendants may not be held liable merely because they held a high position of authority.  Veloz, 339 F. Supp.2d at 519.  Instead, a viable a claim for relief under § 1983 must show that the Defendants were personally involved in the alleged constitutional violation. Thomas v. Irvin, 981 F. Supp. 794, 801 (W.D.N.Y. 1997).  Personal involvement includes not only direct participation in the alleged violation but also actual or constructive notice of the deprivation. Patterson, 375 F.3d at 229.

More specifically, personal involvement of Defendants as ranking officials in their individual capacities may be established by evidence that they (1) participated directly in the alleged constitutional violation; (2) failed to remedy a wrong after being informed of a violation through a report or appeal; (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) were grossly negligent in supervising subordinates who committed the alleged wrongful acts; or (5) exhibited deliberate indifference to the rights of Plaintiff by failing to act on information indicating that unconstitutional acts were occurring. Colon, 58 F.3d at 873.  Thus, personal responsibility on the part of the Defendants' must be established because proof of mere linkage in the prison chain of command does not establish liability.  Veloz, 339 F. Supp.2d at 519.

### 1.  Defendants Outhouse and Mack

Plaintiff fails to establish personal involvement by Defendants Outhouse and Mack.  Plaintiff claims that Defendants Outhouse and Mack are liable because as figures of authority they failed to take supervisory action to prevent conduct by subordinates which allegedly caused him injuries.  (Pl.'s Dep. 56).  However, there is no evidence that Defendants Outhouse and Mack directly participated in the alleged violations, had knowledge of the alleged violations as supervisors, failed to remedy the alleged violations, or were grossly negligent or exhibited deliberate indifference to Plaintiff's rights.

More specifically, Defendant Outhouse was not the Sheriff of Cayuga County during most of Plaintiff's incarceration at the Cayuga County Jail. (Outhouse Aff. ¶ 5 ).  Plaintiff was incarcerated at the Cayuga County Jail in April, 2002, and remained there approximately ten months, while defendant Outhouse became Sheriff of Cayuga County in 2003.  (Outhouse Aff. ¶ 6).  Consequently, Plaintiff was unable to state specific incidents where Defendant Outhouse instructed, or was aware of, any of the wrongful behavior alleged by Plaintiff.  (Pl.'s Dep. 49).  For example, Plaintiff has no written documentation from Defendant Outhouse denying Plaintiff access to the law library, (Pl.'s Dep. 48), and Plaintiff cannot specifically state that Defendant Outhouse denied Plaintiff medical care.  (Pl.'s Dep. 48-49).

Similarly, Plaintiff makes broad allegations that because Defendant Mack is a ranking officer he is liable for his failure to review all requests made by inmates.  (Pl.'s Dep. 56).  To the extent that his request to access the law library was denied, for example, Plaintiff believes that liability should fall on Defendant Mack as the superior officer who should have reviewed Plaintiff's request and provided access.  (Pl.'s Dep. 54).  Plaintiff's argument essentially seeks to impose liability based on Defendant Mack's connection in the prison chain of command, which does not establish Defendant Mack's

personal involvement.  As such, Plaintiff is unable to state that defendant Mack ever denied Plaintiff

medical care, or that Defendant Mack was responsible for confiscating his research documents.  (Pl.'s

Dep. 55).

In sum, there is insufficient evidence upon which a jury could reasonably conclude that

Defendants Outhouse and Mack (1) were personally involved, had notice, or authorized subordinates to

confine Plaintiff in RHU and oversee Plaintiff's mistreatment and harassment (Outhouse Aff. ¶ 8-11),

(Mack Aff. ¶ 5, 12-13 ); (2) were personally involved in the provision or denial of physical and mental

health care to Plaintiff (Outhouse Aff. ¶ 13 ), (Mack Aff. ¶ 11 ); (3) were personally involved, had

notice, or authorized improper denial of Plaintiff's access to the law library (Outhouse Aff. ¶ 19),

(Mack Aff. ¶ 10 ); (4) were personally involved or present at the altercation between Plaintiff and

inmate James Holmquist  (Outhouse Aff. ¶ 21), (Mack Aff. ¶ 8); or (5) were personally involved, had

notice, or authorized subordinates to improperly seize printed medical research documents from

Plaintiff's cell (Outhouse Aff. ¶ 23), (Mack Aff. ¶ 6-7 ).

Because the records do not indicate that Defendants Outhouse and Mack were grossly negligent

in managing subordinates who allegedly committed constitutional violations, or that they were advised

about violations but failed to take remedial action, the Court grants Defendants' motion for summary

judgment with respect to Plaintiff's claims against Defendant Outhouse and Mack for lack of personal

involvement.

### 2.  Defendant Butler

Like Defendants Outhouse and Mack, Defendant Butler lacked personal involvement in most of

the alleged constitutional violations.  For example, Plaintiff alleges that Defendant Butler was

- 8 -

responsible for Plaintiff's placement in RHU, but has no evidence to support this claim.[3] (Pl.'s Dep. 51). Plaintiff also could not affirmatively state that Defendant Butler denied him medical care. (Pl.'s Dep. 52). However, unlike Defendants Outhouse and Mack, Defendant Butler did supervise the confiscation of research documents from Plaintiff's cell. Therefore, the claims asserting violations when Plaintiff was placed in RHU, provided inadequate medical care, and denied access to the law library are dismissed against Defendant Butler for lack of personal involvement but the claim alleging involvement in the confiscation of documents is not.

### C. Eighth Amendment Standard

Assuming that Defendants were personally involved in the alleged violations, the Plaintiff can claim violation of the Eighth Amendment which prohibits the infliction of "cruel and unusual punishments" on prisoners. Veloz, 339 F. Supp.2d at 521. The Eighth Amendment imposes duties on Defendants to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, medical care, and reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832-833 (1994). To establish a violation of the Eighth Amendment, Plaintiff must allege acts or omissions demonstrating deliberate indifference to a substantial risk of serious harm. Veloz, 339 F. Supp.2d at 521. Deliberate indifference embodies both an objective and a subjective component. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be sufficiently serious. Id. Subjectively, the charged official must act with a sufficiently culpable state of mind, which requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. Id.

---

[3] Defendant Butler also was not personally involved in, did not have notice of, and did not authorize Plaintiff's alleged mistreatment and harassment. (Butler Aff. ¶ 7).

### 1.  Protection from Assault

The Eighth Amendment's prohibition against cruel and unusual punishment includes Plaintiff's right to be protected from the violent conduct of other inmates.  Farmer, 511 U.S. at 833.  To have a viable claim based on a failure to prevent harm from the assaultive conduct of other inmates, Plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the Defendants were deliberately indifferent to Plaintiff's health and safety.  Porter, 287 F. Supp.2d at 185.  Defendants' duty under the Eighth Amendment is to ensure reasonable safety.  Id. at 186. However, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  Farmer, 511 U.S. at 843.

Plaintiff alleges that Defendants failed to take reasonable steps or precautions to avert potential harm against him by another inmate, James Holmquist, on January 2003.  (Pl.'s Compl. ¶ 7).  The altercation took place in the dormitory room shared by Plaintiff and Mr. Holmquist.  (Pl.'s Dep. 39). At the time of the altercation, there were no corrections officers in the dormitory room.  (Pl.'s Dep. 45). Once the officers saw the altercation, they proceeded to stop the fight without delay.  (Pl.'s Dep. 45). Plaintiff was subsequently provided with prompt and adequate medical treatment for the injuries sustained in the fight.  (Pl.'s Dep. 43).  Plaintiff asserts that Defendants were deliberately indifferent and grossly negligent in protecting Plaintiff's health and safety due to their inadequate supervision of the area in which Plaintiff was attacked.  (Pl.'s Compl. ¶ 7).  Plaintiff further alleges that Defendants' deliberate indifference was also manifested by their refusal to grant Plaintiff's request for transfer out of the dormitory where the altercation occurred from concern over arguments and hostilities that were building in the dormitory.  (Pl.'s Dep. 39).

Plaintiff's allegations are inconsistent with other facts relevant to his relationship with Mr. Holmquist.  There is no evidence of any history between Plaintiff and Mr. Holmquist that would have warned Defendants of a potential risk of assault.  (Pl.'s Dep 38).  Plaintiff's fears stem from seeing fights among other inmates in the prison rather than direct threats made to him.  (Pl.'s Dep. 40).  In fact, Mr. Holmquist apologized to Plaintiff after the fight when he realized that he had mistaken Plaintiff for another inmate who had talked bad about him.  (Pl.'s Dep. 42).  Therefore, Plaintiff was not under any substantial risk of serious harm from other inmates.  More importantly, Defendants could not have been deliberately indifferent because they were not aware of a substantial risk of assault to Plaintiff.  Although the Defendants did not avert the fight, prison officials responded to the altercation by promptly breaking up the fight and providing Plaintiff with necessary medical attention.  Because Plaintiff was not subjected to a substantial risk of serious harm, and because there is no evidence of deliberate indifference, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's claim that Defendants failed to protect Plaintiff from the assaultive conduct of another inmate.

### 2.  Prison Condition

Plaintiff also has a right to be free from conditions of confinement that impose an excessive risk to Plaintiff's health or safety.  Thomas, 981 F. Supp. at 800.  In order to establish that this right has been violated, Plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, constituting serious deprivation of basic human needs, or of the minimal civilized measure of life's necessities.  Govan, 289 F. Supp.2d at 296.  Moreover, Plaintiff must establish that the official acted or failed to act with deliberate indifference to the inmate's health or safety.  Thomas, 981 F. Supp. at 800.  In assessing the constitutionality of prison conditions, the Court must remember

that conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses. Govan, 289 F. Supp.2d at 296.

Plaintiff alleges that his confinement to the restrictions of RHU was a constitutional violation because he was isolated in cold conditions. (Pl.'s Compl. ¶ 6(E)(3)). However, Plaintiff fails to show that the conditions of his confinement in RHU imposed an excessive risk to his health and safety to which Defendants were deliberately indifferent. Alleging that RHU was cold does not show how Plaintiff was actually harmed, or likely to be harmed, by the conditions of RHU and thereby subjected to risk of serious harm. Accordingly, Plaintiff has failed to establish a violation of his Eighth Amendment rights. Because it cannot be said that Plaintiff was deprived of life's basic necessities while in the RHU simply because it was cold, Defendants are entitled to summary judgment dismissing this claim.

### 3. Medical Care

The Eighth Amendment further protects Plaintiff from inadequate medical care. Hathaway, 37 F.3d at 66. Violation of the Eighth Amendment is established if the deprivation of adequate medical care is sufficiently serious, manifesting a condition of urgency that may produce death, degeneration, or extreme pain. Id. Deliberate indifference to Plaintiff's medical need is demonstrated by proof that Defendants intentionally denied or delayed access to medical care or interfered with the treatment once prescribed. Veloz, 339 F. Supp.2d at 521. Negligent treatment or medical malpractice, or a claim based on the fact that Plaintiff prefers a different treatment are insufficient to state an Eighth Amendment claim. Id.

Plaintiff did not have medical conditions constituting a sufficiently serious medical condition for purposes of the Eighth Amendment. Plaintiff initially alleged that he was denied proper mental

- 12 -

health care but retracted this allegation when he stated that he did not require such treatment because he "just wanted to talk" with a woman working for the Cayuga County Jail medical staff. (Pl.'s Dep. 34). Furthermore, Plaintiff does not suffer from any continuous mental health condition that can potentially cause death, degeneration, or extreme pain. (Pl.'s Dep. 35).

Plaintiff has complained of problems with his ear and was injured in a fight with Mr. Holmquist from which he suffered a concussion, a fractured shoulder, and facial cuts. (Pl.'s Dep 43). Assuming these conditions were sufficiently serious, Defendants did not act with deliberate indifference because Defendants responded to Plaintiff's medical complaints, providing treatment for his ear and to the injuries he suffered from his fight with Mr. Holmquist. (Wallace Dep. 8-9). No reasonable fact finder could conclude that Defendants treated Plaintiff with deliberate indifference as to his medical needs and, therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's claim of inadequate medical care.

### D.  First Amendment

Assuming that Defendants were personally involved in denying Plaintiff access to the law library, Plaintiff can claim violation of the First Amendment which provides prisoners a right of access to the courts that prison officials may not impede. Lewis v. Casey, 518 U.S. 343, 346, 351 (1996). This constitutional right, in turn, give rise to a number of derivative rights, including the right to access legal materials needed to prepare cases such as materials from a law library. Amaker v. Goord, 2002 WL 523371, at * 11 (S.D.N.Y. Mar. 29, 2002) (citing Bounds v. Smith, 430 U.S. 817 (1917) ).

To establish a violation of the fundamental right of access to the courts, Plaintiff must show actual injury caused by the alleged deprivation. Lewis, 518 U.S. at 353, and n. 4 (inmates must show "that nonfrivolous legal claim has been frustrated or was being impeded" due to the action or inaction

of prison officials).  However, even if prisoners are not provided with access to a prison library, the right of access to courts is not infringed where prisoners are provided with appointed counsel.  <u>Bounds</u>, 430 U.S. at 830-831; <u>Spates v. Manson</u>, 644 F.2d 80, 84-85 (2d Cir. 1981) ("the right to represent oneself in criminal proceedings, [though] protected by the Sixth Amendment, does not carry with it a right to state-financed library resources where state-financed legal assistance is available."); <u>Abodeen v. Bufardi</u>, No. 03-0072 (2d Cir. Sept. 18, 2003) (affirmed that "the right of access to courts is not infringed where prisoners are provided with appointed counsel[,] even if they are not supplied with an adequate prison library.").

Plaintiff alleges that Defendants acted in violation of his rights when he was denied access to the law library in preparation for his criminal trial.  (Pl.'s Compl. ¶ 6).  Plaintiff made daily requests to visit the law library and his requests were granted except for security reasons when an escort was unavailable.  (Hurd Dep. 24).  Even if Plaintiff was denied access to the law library when an escort was available, he still does not have a valid First Amendment claim because he was provided counsel during his criminal trial.  Plaintiff fails to demonstrate any actual injury arising from the denial of access to the law library when an escort was unavailable.

### E.  Eleventh Amendment

While states are protected by the Eleventh Amendment from suits brought by a private party, municipalities are not.  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 70 (1989).  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.  <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 529 (2d Cir. 1993).  Defendants are not state

officials who are protected under the Eleventh Amendment, but rather municipal officials, and therefore the Eleventh Amendment does not bar this action.

### F. Qualified Immunity

Defendants assert that they are entitled to qualified immunity.  Under the doctrine of qualified immunity, government officials performing discretionary functions in the course of their duties are immune from civil liability provided that their actions do not violate a clearly established statutory or constitutional right of which a reasonable official comparably placed would have known.  Zamakshari v. Dvoskin, 899 F. Supp. 1097, 1106 (S.D.N.Y. 1995).  In evaluating a motion for summary judgment on the basis of qualified immunity, the Court must first inquire whether, construing the facts most favorably to the Plaintiff, the facts show that the Defendants violated a constitutional right.  Poe v. Leonard, 282 F.3d 123, 132 (2d Cir. 2002); see also, Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the Court finds that the Defendants did not violate a constitutional right, the Court will proceed no further. Loria v. Gorman, 306 F.3d 1271, 1281 (2d Cir. 2002).  If the Court finds that there has been a constitutional violation, the Court must determine the objective reasonableness of the Defendants' belief in the lawfulness of their actions.  Loria, 306 F.3d at 1282.  See also, Saucier, 533 U.S. at 201.  If the Defendants reasonably believed that their actions did not violate Plaintiff's rights, they are entitled to qualified immunity even if that belief was mistaken.[4]  Loria, 306 F.3d at 1282.  However, if their belief was not objectively reasonable, qualified immunity will not apply.  Id.

In this case, Plaintiff emphasizes that the confiscation of his research documents under the supervision of Defendant Butler violated his constitutional rights.  (Pl.'s Compl. ¶ 6).  The documents

---

[4]  The objective reasonableness test is met, and the Defendants are entitled to immunity, if officials of reasonable competence could disagree on the legality of the Defendants' actions.  Thomas, 981 F. Supp. at 802.

that were allegedly seized improperly from Plaintiff's dormitory bunk were studies related to the drug Prozac, which Plaintiff intended to introduce at his criminal trial to show that the drug caused him to become mentally unstable and murder his wife.  (Pl.'s Dep. 61).  Defendant Butler supervised the confiscation of Plaintiff's documents pursuant to the Cayuga County Jail's rules and regulations limiting the number of non-privileged documents which prisoners can keep in their living area to ensure safety and security.  (Butler Aff. ¶ 11).  Cayuga County Jail's rule against possession of excessive papers was created pursuant to the Minimum Standards and Regulations for Management of County Jails and Penitentiaries (hereinafter "Minimum Standards"), which are promulgated by the New York State Department of Corrections.  (Butler Aff. ¶ 11).  Part 7004.3 of the Minimum Standards specifically authorize correctional facility officials to inspect incoming prisoner correspondence, excluding any privileged correspondence, to ensure the absence of contraband.[5]  (Butler Aff. ¶ 12 ). According to the Minimum Standards, "privileged" correspondence is defined as legal correspondence from an attorney or any individual under the direct supervision of an attorney.  (Butler Aff. ¶ 13 ).  The Cayuga County Jail's rule against possession of excessive non-privileged documents allows inmates to have no more than five pieces of non-privileged correspondence, with any excess non-privileged correspondence subject to seizure.  (Butler Aff. ¶ 16).  Plaintiff violated the rule and possessed one hundred sheets of materials, which was grossly over the limit of five non-privileged pieces of paper. (Pl.'s Dep. 60).  No privileged materials were seized from Plaintiff during the search.  (Butler Aff. ¶ 18).  The studies on Prozac were non-privileged documents because they were sent by Plaintiff's sister, not his attorney or anyone associated with his attorney.  (Pl.'s Dep. 61).

---

[5] Part 7004.3 of the Minimum Standards states: "Incoming prisoner correspondence other than privileged correspondence may be opened and inspected outside the presence of the intended prisoner recipient.  Such correspondence may be opened and inspected solely to ensure the absence of contraband." (Exhibit "A" to Butler Aff.).

Confiscating Plaintiff's research documents was not a violation of his constitutional rights because, in addition to the reasons set forth supra at section III(D), restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives. Beard v. Banks, 126 S. Ct. 2572, 2578 (2006). In Beard, a Pennsylvania prison policy denying inmates access to newspapers, magazines, and photographs was not found to be a violation of prisoners' First Amendment rights.[6] 126 S. Ct. at 2575. The court determined that the Pennsylvania policy served several penological objectives, one of which was to minimize the amount of property in the hands of prisoners, which made it easier for correctional officers to detect concealed contraband and provide security. Id. at 2579. In its finding, the court considered four factors relevant in determining the reasonableness of the regulation at issue: (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are ready alternatives to the regulation. Beard, 126 S. Ct. at 2579. See also Turner v. Safley, 482 U.S. 78, 89-91 (1987).

In this case, the Cayuga County Jail promulgated rules and regulations limiting the number of printed materials which a prisoner may keep in his living area to ensure safety, security, and order at the correctional facility and reduce the risk of fire. (Butler Aff. ¶ 15). The regulation restricting the amount of documents held by Plaintiff bear a rational relation to Cayuga County Jail's valid penological interests in maintaining internal security. The regulation promotes internal security by reducing the risk of hidden contraband or the risk of fire that can undermine prison safety. Plaintiff

---

[6] A controlling rationale for the court's decision was deferring to the professional judgment of prison officials, who reached an experience-based conclusion that certain restrictive policies were necessary to further legitimate penological goals. Beard, 126 S. Ct. at 2579. See also, Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

also had alternative means of exercising his right to retain important documents.  Plaintiff had the

option of consulting with his counsel during his criminal trial to make sure that the Prozac documents

were sent from the attorney's office so that it was privileged and not subject to seizure.  Furthermore,

the impact an accommodation of Plaintiff's asserted right would have on the prison is that it would

impair the ability of corrections officers to maintain security and also undermine the rules promulgated

by the Cayuga County Jail in accordance with the Minimum Standards.  When accommodation will

have an impact on the prison, courts are particularly deferential to prison administrators' regulatory

judgments.  Overton v. Bazzetta, 539 U.S. 126, 135 (2003).  Finally, there is no ready alternative to

regulating the possession of non-privileged documents that undermines the reasonableness of the

regulation.  The alternative is to allow possession of a larger volume of non-privileged documents, but

that would undermine the Cayuga County Jail's interest in maintaining prison safety.  Because there is

no ready alternative that fully accommodates Plaintiff's rights at *de minimis* cost to Cayuga County

Jail's valid penological interests, the policy restricting possession of non-privileged documents is

reasonable.  Turner, 482 U.S. at 91.  In light of this, the actions taken by Defendants did not violate

Plaintiff's constitutional rights.  Alternatively, assuming Defendants violated Plaintiff's constitutional

rights, they would be entitled to qualified immunity because officials of reasonable competence could

disagree on the legality of the confiscation of the non-privileged documents.  Thomas, 981 F. Supp. at

802.  Accordingly, Defendants are entitled to summary judgment insofar as it is based on the seizure

of Plaintiff's documents.

### G.  Retaliation

Prison officials may not retaliate against prisoners for the exercise of the right to petition the

government for the redress of grievances.  Colon, 58 F.3d at 872.  However, claims of retaliation must

be examined with skepticism and care because prisoners will often take exception to the decisions and actions by prison officials, easily fabricating claims of retaliation.  Id.  Because retaliation claims can easily be fabricated, plaintiffs bear a heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial.  Aziz Zarif Shabazz, 994 F. Supp. at 467.

In order to assert a claim of retaliation successfully, the Plaintiff must show that he engaged in conduct that was constitutionally protected and that retaliation against the protected conduct was a substantial or motivating factor in Defendants' actions.  Aziz Zarif Shabazz, 994 F. Supp. at 468.  If the Plaintiff carries that burden, the Defendants must show by a preponderance of the evidence that they would have disciplined the Plaintiff even in the absence of the protected conduct.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  Thus, Defendants' action may be upheld if the action would have been taken based on the proper reasons alone.  Graham, 89 F.3d at 79.  A finding of sufficient permissible reasons to justify Defendants' action is determined in the context of prison administration where the Court recognizes that prison officials have broad administrative and discretionary authority. Id.

Plaintiff alleges that when he voiced several complaints about prison conditions and attempted to file grievances after being involved with several disagreements with prison officials, a series of retaliatory activities ensued.  (Pl.'s Compl. ¶ 6).  Plaintiff claims he was placed in solitary confinement in the RHU, denied access to the law library, provided inadequate medical care, and his documents were confiscated.  (Pl.'s Compl. ¶ 6).  As discussed previously, Plaintiff was provided adequate medical care when necessary and only denied access to the library for security reasons when an escort was unavailable.  Moreover, confiscating Plaintiff's documents was a reasonable means to maintaining Cayuga County Jail's penological interest in prison safety.

With respect to Plaintiff's placement in RHU, Plaintiff relies on conclusory allegations of retaliation, vaguely asserting that it is common practice in Cayuga County Jail to place inmates in the solitary confines of RHU whom they considered to be problematic and personally disliked for repeated complaints and grievance filings.  (Pl.'s Compl. ¶ 6(E)(2)).  Plaintiff successfully shows that his filing the grievance was the constitutionally protected conduct that may have improperly motivated retaliation.  However, he is unsuccessful in proving that the protected act he engaged in was in fact a motivation behind the alleged retaliation.  Contrarily, Defendants meet their burden in showing that they would have punished Plaintiff regardless of his repeated complaints because Defendants were prompted to place Plaintiff in RHU after Plaintiff received five misbehavior reports within a span of twelve days.[7]  (Pl.'s Dep. 13-16).  Plaintiff's protected act was the right to file grievances, yet what motivated Plaintiff's confinement was his breach of prison rules, which is not constitutionally protected conduct.  Plaintiff has no credible proof to controvert the arguments and evidence offered by Defendants, which show that there was cause for placing Plaintiff in RHU.  Plaintiff's broad and unsubstantiated allegations of retaliation cannot defeat Defendants' motion for summary judgment. The Court grants Defendants' motion for summary judgment dismissing Plaintiff's claim of retaliation.

### H. Motion for Leave to Amend

Plaintiff's motion for leave to file an amended complaint (Dkt. No. 44) is denied as both untimely and futile.  Magistrate Judge Homer set December 30, 2004 as the deadline for filing non-dispositive motions.  The instant motion was not filed until June 15, 2006, long after the deadline has passed.  Moreover, Plaintiff fails to demonstrate good cause for the delay.  According to Plaintiff, he

---

[7] Plaintiff received one citation each on 9/14/02, 9/19/02, 9/24/02, and two on 9/26/02.  Misbehavior included threats against officials, attempts to incite other inmates, flooding his cell with water, and violating the dress code. (Exhibits L-Q Defs.' Mot. Summ. J.)

came across another inmate who believed that Defendants had an unofficial policy of placing "trouble" inmates in RHU without a hearing and that the proposed Defendant Elser was responsible for implementing that policy. Plaintiff, however, should have been well aware of the relevant facts pertaining to him and should have known whether he was placed in the RHU without a hearing. Further, in his February 2005 discovery responses, Plaintiff indicated that Elser should be added as a Defendant. Nevertheless, he waited an unreasonable period of time before seeking leave to add Elser as a Defendant. Accordingly, Plaintiff's motion is untimely.

In any event, Plaintiff's due process claim with respect to his placement in the RHU is without merit. "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995)). "[W]ith respect to 'normal' SHU confinement, [the Second Circuit has] held that a 101-day confinement does not meet the Sandin standard of atypicality." Id. (citing Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999)). "[U]nder abnormal or unusual SHU conditions, periods of confinement of less than 101 days may implicate a liberty interest." Id.

Here, Defendants contend that Plaintiff was placed in the RHU for thirty days. Plaintiff contends that he was in the RHU for ninety days. Even assuming Plaintiff was in the RHU for ninety days, he has presented no evidence concerning his confinement in the RHU to suggest that it presented

- 21 -

conditions abnormal or unusual from typical RHU confinement.  Accordingly, the due process claim

must be dismissed and it would be futile to add Elser with respect to that claim.


**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED,**

Plaintiff's Complaint is DISMISSED and Plaintiff's motion for leave to file an amended complaint is

**DENIED**.  The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated:   July 21, 2006

Thomas J. McAvoy
Senior, U.S. District Judge